UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ERIC LAMAR CROMER,

        Plaintiff,                                    Case No. 4:06-cv-136

v.                                                   Honorable Janet T. Neff

UNKNOWN CHANEY et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is incarcerated at the Bellamy Creek Correctional Facility (IBC), but the events giving rise to his action occurred while he was incarcerated at the Riverside Correctional Facility (RCF) and the Deerfield Correctional Facility (ITF). In his *pro se* complaint, he sues RCF Resident Unit Officer (unknown) Chaney, RCF Corrections Officer Tom Lowande, ITF Corrections Officer "John Doe," ITF Corrections Officer K. Dusenbery, ITF Deputy Warden Daniel Wilson, ITF Deputy Warden Roy Conrad, RCF/ITF Warden Carmen Palmer and MDOC Security Threat Group Coordinator Robert Mulvaney. Plaintiff claims that Defendants violated his First Amendment rights by depriving him of religious materials. He also claims that Defendants retaliated against him for filing grievances by designating him a Security Threat Group member.

        On April 19, 2007, Defendants Chaney, Lowande, Dusenbery, Wilson, Conrad, Palmer and Mulvaney filed a motion to dismiss and supporting brief (dockets #21-22) on the ground that Plaintiff failed to exhaust his administrative remedies. Plaintiff filed a response in opposition

to Defendants' motion on May 31, 2007 (docket #25).  On August 13, 2007, the Court issued an order converting Defendants' motion to a motion for summary judgment and provided the parties with an additional fourteen days to submit any evidence that a party would like the Court to consider in connection with the Rule 56 motion.  No additional materials were submitted by the parties.

## Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).

Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see also Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

> [A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations . . . . [I]nstead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.

*Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005) (citations omitted).

Where, however, a defendant attempts to establish an affirmative defense on summary judgment, it bears the burden of proving "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *Thomas v. Speedway SuperAmerica, LLC*, __ F.3d __, 2007 WL 3145335, at *3 n.2 (6th Cir. Oct. 30, 2007).

**Facts**

Plaintiff claims that from 1997 through 2003, he ordered and received Five Percent Nation of Gods and Earths religious materials from an MDOC-approved vendor. On December 6, 2003, while Plaintiff was incarcerated at RCF, Defendant Chaney confiscated Plaintiff's Five Percent Nation religious materials from his cell. Chaney wrote a contraband removal record and a notice of intent (NOI) to conduct an administrative hearing because the Five Percent Nation had been a Security Threat Group (STG) since November 14, 2003, and any materials related to that group are considered to be contraband. Plaintiff claims that he was permitted to possess the religious materials pursuant to Michigan Department of Corrections (MDOC) Policy Directive 05.03.150(II). He further asserts that he was not provided with notice that such materials were prohibited in violation of MDOC Policy Directive 04.07.112.

Following an administrative hearing, Defendant Lowande found that the seized materials containing any reference to the Five Percent Nation were STG contraband and would be sent home at the prisoner's expense. (7/28/04 Administrative Hearing Report, Exhibit D, docket #1.) According to the hearing report, Plaintiff signed an STG Renunciation Form renouncing the Five Percent Nations of Gods and Earth. *Id.* Plaintiff contends that Lowande coerced him to sign the STG renunciation form, even though Plaintiff denied any association with an STG. Plaintiff maintains that the seizure of his religious material infringed upon his rights to due process and to practice his religion.

On May 27, 2005, Plaintiff was transferred from security level II at RCF to security level I at ITF. The following day, Officer Wickwire[1] confiscated contraband items from Plaintiff's

---

[1] Wickwire is not a defendant in this action.

cell. Wickwire wrote a contraband removal record, two major misconduct reports, and one minor misconduct report for the contraband. None of the seized items were religious in nature. On May 30, 2005, Wickwire refused Plaintiff's request to have his clothes washed because prisoners were only permitted to wash their clothes once a week. Plaintiff complained to Defendant Dusenbery that MDOC policy requires that prisoners be allowed to have their clothes washed at least twice a week, plus a make-up day. Dusenbery allegedly responded by saying, "didn't you just get here? If you want to stay, don't start messing with our process." (Compl., § 29, docket #1.) Plaintiff wrote a letter to Defendant Wilson complaining of inhumane treatment and living conditions because he was unable to have his clothes washed twice a week, plus a make-up day. Because the issue was not resolved, Plaintiff wrote a grievance against Defendants Dusenbery and Wilson. The grievance was resolved by Plaintiff being given a second day per week to have his white clothes washed.

Upon his arrival at ITF, Plaintiff also requested a vegetarian diet. Defendant Conrad told Plaintiff that he would have to wait until the classification committee issued a vegetarian detail. Plaintiff informed Conrad that he would be filing a grievance complaining about the delay in receiving his vegetarian detail. Conrad warned Plaintiff not to start interfering with the way things were done at the facility or the last thing he would have to worry about was a vegetarian meal. Wickwire told Plaintiff that he could not get in the vegetarian meal line without a vegetarian detail and that Plaintiff could pick the meat out of his food or just eat the side dishes. On June 8, 2005, Plaintiff wrote to Defendant Wilson requesting a vegetarian detail and put him on notice that Plaintiff would file a grievance if the matter was not resolved.

Following a misconduct hearing on June 7, 2005, the hearing officer found Plaintiff guilty of all three contraband offenses charged by Officer Wickwire. (6/7/05 Major Misconduct Hearing Report, Exhibit F, docket #1.) On June 10, 2005, Plaintiff learned that he was designated

an STG I member as a result of his affiliation with the Five Percent Nation and was transferred to IBC, a higher security level facility.  The STG Member Identification form was signed by Defendant Dusenbery on June 2 and was authorized by Defendant Mulvaney on June 6, 2005.  The form referred to Plaintiff's possession of STG materials and renunciation on July 28, 2004.  The form also indicated "use/possession of symbols or logos."  Apparently, Defendant "John Doe" found a medallion during a routine search of Plaintiff's cell that allegedly is associated with the Five Percent Nation.  Plaintiff argues that he never received a contraband removal record, notice of intent to conduct an administrative hearing, or a misconduct report relating to the alleged medallion.  He contends that Defendants John Doe, Dusenbery and Mulvaney fabricated the allegations regarding the medallion in order to designate him an STG member.

       Plaintiff claims that Defendant Chaney violated his First Amendment right to practice his religion and Fourteenth Amendment due process rights by confiscating his religious material; Defendant Lowande violated his First and Fourteenth Amendment rights by ruling that Plaintiff had to send his religious materials home; Defendant Lowande violated his due process rights when he forced Plaintiff to sign the STG renunciation form; Defendants Dusenbery, Wilson and Conrad retaliated against him for complaining and filing a grievance by re-classifying him as an STG member; Defendants "John Doe," Dusenbery and Mulvaney violated his due process rights by failing to provide Plaintiff with notice and a hearing regarding the medallion allegedly found in his property; Defendants John Doe, Dusenbery and Mulvaney violated his due process rights by fabricating a charge that Plaintiff possessed an STG medallion, which resulted in his STG designation; Defendant Mulvaney violated his due process rights by designating him an STG member without adequate documentation; Defendants John Doe, Dusenbery, Wilson, Conrad and Mulvaney retaliated against Plaintiff by fabricating a charge that Plaintiff possessed a medallion associated with an STG; and

Defendants Palmer, Conrad and Wilson violated his First and Fourteenth Amendment rights by failing to remedy the unconstitutional conduct through the grievance process. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

## Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). Additionally, a plaintiff must fully exhaust his administrative remedies before filing a complaint. *See Freeman*, 196 F.3d at 645. Further, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006) (emphasis added). Thus, in order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922 (2007); *Woodford*, 126 S. Ct. at 2386. "Compliance with the prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust." *Jones*, 127 S. Ct. at 922.

In interpreting the PLRA, it is appropriate to look to the substantively similar exhaustion rules applicable in habeas cases for guidance. *Woodford*, 126 S. Ct. at 2384. In the habeas corpus context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "To 'protect the integrity' of the federal exhaustion rule, we ask not only

whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . ." *Id.* at 848 (citation omitted; emphasis in original). In habeas, the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default. *Woodford*, 126 S. Ct. at 2387. To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004), *cert. denied*, 544 U.S. 928 (2005); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 (2006); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'proper' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.") Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

In *Jones v. Bock*, 127 S. Ct. 910, 921 (2007), the Supreme Court held that "the failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially

- 8 -

plead or demonstrate exhaustion in their complaints." Consequently, Defendants have the burden to plead and prove that Plaintiff failed to exhaust his administrative remedies. *Id.* at 919-22.

       I.      <u>MDOC Grievance Policy</u>

Michigan Department of Corrections Policy Directive 03.02.130 (eff. Dec. 19, 2003)[2] sets forth the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The policy provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, e.g., the regional health administrator for a medical care grievance. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II

---

[2]The MDOC amended the Grievance Policy on March 5 and July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.   *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

With regard to content, the policy requires that the issues be presented briefly.  MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T.  The policy further states, "Information provided shall be limited to the facts involving the issue being grieved (i.e. who, what, when where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.*  In *Jones*, the Supreme Court rejected the requirements imposed by the Sixth Circuit that, in order to properly exhaust, all defendants named in the complaint must have been named in the Step I grievance.  127 S. Ct. at 922-23.  However, the *Jones* Court relied upon the version of the policy that took effect on November 1, 2000.  In that version of the policy, there was no requirement that particular officials must be named in a Step I grievance.  In this case, the version of the policy that became effective on December 19, 2003, governs the grievances filed by Plaintiff.  As set forth above, the 2003 version of the policy requires a prisoner to provide the names of all those involved in the issue in the Step I grievance.

       II.    <u>Grievances</u>

Plaintiff filed five grievances concerning the claims raised in his complaint.  Each of those grievance will be discussed below.

A.     **Grievance No. ITF 2005-06-304-24z**

Plaintiff filed a Step I grievance on June 17, 2005, concerning his STG designation. (Defendants' Exhibit 3, docket #22-5.) The grievance mentioned Defendants Dusenbery and Lowande. Plaintiff appealed the grievance to Step III. Defendants argue that although Plaintiff recites background facts beginning from the July 28, 2004, administrative hearing regarding his possession of STG materials, the only timely claim exhausted by his grievance was the STG designation Plaintiff received on June 10, 2005. In *Woodford*, the Supreme Court held that the exhaustion requirement was not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy. 127 S. Ct. at 2386. However, in this case, Plaintiff's grievance was not rejected as untimely at Step I or at any other Step of the grievance process. While Plaintiff may have failed to timely file his grievance, prison officials did not rely on the default by rejecting the grievance as untimely. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied upon by the state courts). Accordingly, Plaintiff properly exhausted his claims against Defendant Dusenberry and Lowande concerning the seizure of STG materials and his STG designation.

B.     **Grievance No. IBC 2005-07-2696-08g**

Plaintiff filed another Step I grievance on July 19, 2005, concerning the seizure of STG materials and his STG designation. (Defendants' Exhibit 2, docket #22-4.) His grievance again mentioned Defendants Lowande and Dusenbery. Plaintiff pursued the grievance to Step III. Defendants argue that the claims raised in Plaintiff's grievance are unexhausted because the grievance was untimely filed under MDOC policy. According to Defendants, the grievance was filed more than seven days after Plaintiff was designated an STG member on June 16, 2005. Plaintiff argues that his grievance cannot be considered defaulted because it was not rejected as untimely at

- 11 -

any step of the grievance process. As stated above, prison officials must rely on the default by rejecting the grievance as untimely in order for the claims asserted in the grievance to be procedurally defaulted. *See Maupin*, 785 F.2d at 138. Consequently, Plaintiff's grievance exhausted his claims against Defendants Dusenberry and Lowande concerning the seizure of STG materials and his STG designation.

C.     **Grievance No. RCF 2005-10-1446-08g**

Plaintiff filed a Step I grievance on October 30, 2005, concerning the confiscation of alleged STG material on December 6, 2003. (Defendants' Exhibit 4, docket #22-6.) Plaintiff complained that he was not given thirty days notice that the materials were considered contraband and that he did not fit STG criteria because he was ordering materials that were allowed by the MDOC. Plaintiff names Defendant Lowande, who conducted the administrative hearing regarding the contraband on July 28, 2004. He pursued the grievance to Step III. Defendants argue that the grievance fails to satisfy the exhaustion requirement because the issues raised were untimely. Like the two previous grievances, this grievance was not rejected as untimely at any step of the grievance process. Because prison officials did not rely on the default, Plaintiff exhausted his claims against Lowande arising from the seizure of his STG materials.

D.     **Grievance No. RCF 2006-01-91-28a**

On January 16, 2006, Plaintiff filed a Step I grievance against "RUO Chaney, LT. Tom Lowande, Warden Carmen Palmer, Deputy [Daniel Wilson] and Doug Dingdeley"[3] (Defendants' Exhibit 6, docket #22-8.) Plaintiff continued to argue in his grievance that he was not given proper notice that the materials he ordered in 2003 were considered prohibited STG materials

---

[3]Doug Dingdeley is not named as a Defendant in this action.

and that there was not sufficient cause to designate him an STG member. Plaintiff appealed the grievance to Step III. Defendants claim that the grievance was not properly exhausted because it was rejected at Step I as untimely and duplicative of RCF 2005-10-1446-08g. The Step I response stated:

> This grievance RCF-06-01-0091-028A was received on 1-25-06. This grievance is a duplicate of grievance RCF 05-11-01446-008G that you filed on 11-7-05. It was denied and sent back to you on 11-15-05. Please refer to P.D. 03.02.130. This grievance is rejected.

The Step I respondent did not explicitly reject the grievance as untimely; therefore, the claims asserted in Plaintiff's grievance are not defaulted on that ground. *See Maupin*, 785 F.2d at 138. However, the grievance respondent relied upon the provision in the MDOC Grievance Policy that a grievance may be rejected "if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant." MICH. DEP'T. OF CORR., Policy Directive 03.02.130(G)(1). In order to properly exhaust, Plaintiff must comply with the prison grievance procedures. *See Jones*, 127 S. Ct. at 910; *Woodford*, 127 S. Ct. at 2386. Consequently, the claims asserted in Plaintiff's grievance are unexhausted to the extent to that the grievance was duplicative of Grievance No. RCF 05-11-01446-008G. Plaintiff named Defendant Lowande in Grievance No. RCF 05-11-01446-008G; therefore, he was prohibited from filing another grievance against Lowande asserting the same claims.

Plaintiff claims that he did not learn the names of all of the responsible parties until after he filed Grievance No. RCF 05-11-01446-008G. He argues that he filed a new Step I grievance naming all of the responsible parties in order to comply with then-existing Sixth Circuit case law holding that, in order to properly exhaust under MDOC grievance procedures, a prisoner must have mentioned all of the defendants at Step I of the grievance process. *See Burton v. Jones*, 321 F.3d

569, 574 (6th Cir. 2003).[4] As a result, the instant grievance cannot be considered duplicative to the extent that it asserted claims against individuals who were not named in the previous grievance, i.e., Defendants Chaney, Palmer, and Wilson. Because the instant grievance was the first time that Plaintiff asserted claims against those Defendants, Plaintiff's claims against them are not procedurally defaulted. *See Spruill*, 372 F.3d at 232 ("[A] prison grievance system's procedural requirements [may] not be imposed in a way that offends the Federal Constitution or the federal policy embodied on § 1997e(a).") Accordingly, Defendants have failed to demonstrate that Plaintiff defaulted his claims against Defendants Chaney, Palmer and Wilson concerning Plaintiff's STG materials and STG designation.

    E.    **Grievance No. ITF 2006-01-37-28a**

On January 17, 2006, Plaintiff filed a grievance against the following Defendants: (1) the "John Doe" who allegedly discovered the medallion in Plaintiff's possessions, (2) Captain Dusenbury, (3) CFA Robert Mulvaney, (4) ADW Daniel Wilson, (5) Deputy Roy Conrad and (6) Warden Carmen Palmer. (Defendants' Exhibit 7, docket #22-9.) Plaintiff complained that no contraband removal record, notice of intent to conduct an administrative remedy, or misconduct charge was written in response to the alleged medallion found in Plaintiff's possessions. As a result, Plaintiff asserts that there was a lack of evidence to support the STG designation. Defendants claim

---

[4]*Burton* was abrogated by *Jones v. Bock*, 127 S. Ct. at 922-23, where the Supreme Court rejected the requirements imposed by the Sixth Circuit that, in order to properly exhaust, all defendants named in the complaint must have been named in the Step I grievance. In reaching its decision, the *Jones* Court relied upon the version of the Grievance Policy that took effect on November 1, 2000. In that version of the policy, there was no requirement that particular officials must be named in a Step I grievance. In this case, the version of the policy that became effective on December 19, 2003 governs the grievances filed by Plaintiff. As set forth above, the 2003 version of the policy requires a prisoner to provide the names of all those involved in the issue in the Step I grievance.

that the grievance failed to exhaust Plaintiff's claims because the Step I grievance was rejected as duplicative of Grievance No. ITF 2005-06-304-24z and as "extremely untimely."

Plaintiff appears to argue that he was delayed in filing this grievance because he did not know the names of all of the responsible parties until January 2006. However, Plaintiff alleges in his complaint that he received the STG member identification form on June 16, 2005, that was signed by Defendant Dusenbery and authorized by Defendant Mulvaney. (Compl., ¶ 46.) In addition, on June 21, 2005, he received a Security Classification Screen Review for purposes of transferring him from ITF to IBC that was approved by Defendants Wilson and Conrad. (Plaintiff's Response, 10, docket #25.) Plaintiff, therefore, knew the names of the Defendants and their involvement in his STG classification and transfer to IBC in June, 2005. Plaintiff did not file the instant grievance until January, 2006. Plaintiff has failed to provide a sufficient explanation of his six-month delay in order to rebut the rejection of his grievance as untimely. Prison officials explicitly relied upon the time requirement in rejecting Plaintiff's grievance, thus the claims set forth in this grievance are defaulted. *See Woodford*, 127 S. Ct. at 2386. Because the claims raised in the grievance are defaulted under the timeliness requirement, I need not address the issue of duplication.

F.  **Grievance No. ITF 2006-02-53-28a**

Plaintiff filed a Step I grievance on January 27, 2007, against Defendants Wilson, Dusenbury, Conrad, Palmer and Mulvaney, claiming that he was designated an STG and transferred to a higher security level in retaliation for complaining and filing grievances while he was at ITF. (Defendants' Exhibit 8, docket #22-10). Defendants claim that Plaintiff failed to exhaust his retaliation claim against any of the Defendants because his grievance was rejected at Step I as untimely and duplicative of Grievance Nos. ITF 2005-06-304-24z and ITF 2006-01-37-28a.

While Plaintiff was designated an STG and transferred to IBC in June 2005, he attempts to argue that he was unaware of the grievable issue of retaliatory transfer until January 2006. On the Step I grievance form, Plaintiff stated that the date of the incident being grieved was June 10, 2005, the date that he learned of his STG designation. Plaintiff specifically alleges in his complaint that while he was incarcerated at ITF in May and June of 2005, Defendants Dusenbery and Conrad warned him not to start interfering with the way they did things at ITF. (Compl., ¶¶ 29, 37.) After receiving those warnings, Plaintiff filed grievances, or threatened to file grievances, against Defendants Dusenbery, Wilson and Conrad complaining about conditions of confinement at ITF. Consequently, Plaintiff should have been aware of his retaliation claim upon his STG classification and transfer to IBC in June 2005. Prison officials expressly relied upon the time requirement in rejecting Plaintiff's grievance; therefore, Plaintiff defaulted the claims asserted in his grievance. Since the claims raised in the grievance are defaulted under the time requirement, I need not address the issue of duplication.

### III. Summary

Defendants Conrad and Mulvaney have sustained their burden of showing that Plaintiff failed to properly exhaust any claim against them. Defendants Chaney, Lowande, Dusenbery, Wilson and Palmer have failed to show that Plaintiff's claims against them are unexhausted, with the exception of Plaintiff's claim of retaliation. Plaintiff failed to exhaust his retaliation claim against any of the named Defendants.

### Recommended Disposition

For the foregoing reasons, I recommend that the Court grant summary judgment in favor of Defendants Conrad and Mulvaney on Plaintiff's First Amendment free exercise and Fourteenth Amendment due process claims and in favor of all of the moving parties on Plaintiff's

retaliation claim. Defendants Conrad and Mulvaney should be dismissed from the action without prejudice pursuant to 42 U.S.C. § 1997e(a). Plaintiff's retaliation claim also should be dismissed without prejudice to all of the moving parties. I further recommend that the motion be denied as to Plaintiff's remaining First and Fourteenth Amendment claims against Defendants Lowande, Dusenbery, Chaney, Palmer and Wilson.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: November 14, 2007

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).