UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC LAMAR CROMER,

                Plaintiff,                    Case No. 4:06-cv-136

v.                                     Honorable Janet T. Neff

UNKNOWN CHANEY et al.,

                Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Eric Lamar Cromer is an inmate currently confined at the Boyer Road Correctional Facility. The events giving rise to his action occurred while he was incarcerated at the Riverside Correctional Facility (RCF) and the Deerfield Correctional Facility (ITF). Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against RCF Resident Unit Officer (unknown) Chaney, RCF Corrections Officer Tom Lowande, ITF Corrections Officer "John Doe," ITF Corrections Officer K. Dusenbery, ITF Deputy Warden Daniel Wilson, ITF Deputy Warden Roy Conrad, RCF/ITF Warden Carmen Palmer and MDOC Security Threat Group Coordinator Robert Mulvaney. Plaintiff claims that Defendants violated his First Amendment rights by depriving him of religious materials. He also claims that Defendants retaliated against him for filing grievances by designating him a Security Threat Group (STG) member.

Plaintiff claims that from 1997 through 2003, he ordered and received Five Percent Nation of Gods and Earths religious materials from an MDOC-approved vendor. On December 6, 2003, while Plaintiff was incarcerated at RCF, Defendant Chaney confiscated Plaintiff's Five Percent

Nation religious materials from his cell. Chaney wrote a contraband removal record and a notice of intent (NOI) to conduct an administrative hearing because the Five Percent Nation had been a Security Threat Group (STG) since November 14, 2003, and any materials related to that group are considered to be contraband. Plaintiff claims that he was permitted to possess the religious materials pursuant to Michigan Department of Corrections (MDOC) Policy Directive 05.03.150(II). He further asserts that he was not provided with notice that such materials were prohibited in violation of MDOC Policy Directive 04.07.112.

Following an administrative hearing, Defendant Lowande found that the seized materials containing reference to the Five Percent Nation were STG contraband and would be sent home at the prisoner's expense. (7/28/04 Administrative Hearing Report, Exhibit D, docket #1.) According to the hearing report, Plaintiff signed an STG Renunciation Form renouncing the Five Percent Nations of Gods and Earth. *Id.* Plaintiff contends that Lowande coerced him into signing the STG renunciation form, even though Plaintiff denied any association with an STG. Plaintiff maintains that the seizure of his religious material infringed upon his rights to due process and to practice his religion.

On May 27, 2005, Plaintiff was transferred from security level II at RCF to security level I at ITF. The following day, Officer Wickwire[1] confiscated contraband items from Plaintiff's cell. Wickwire wrote a contraband removal record, two major misconduct reports, and one minor misconduct report for the contraband. None of the seized items were religious in nature. On May 30, 2005, Wickwire refused Plaintiff's request to have his clothes washed because prisoners were only permitted to wash their clothes once a week. Plaintiff complained to Defendant Dusenbery that

---

[1]Wickwire is not a defendant in this action.

MDOC policy requires that prisoners be allowed to have their clothes washed at least twice a week, plus a make-up day. Dusenbery allegedly responded by saying, "didn't you just get here? If you want to stay, don't start messing with our process." (Compl., § 29, docket #1.) Plaintiff wrote a letter to Defendant Wilson complaining of inhumane treatment and living conditions because he was unable to have his clothes washed twice a week, plus a make-up day. Because the issue was not resolved, Plaintiff wrote a grievance against Defendants Dusenbery and Wilson. The grievance was resolved by Plaintiff being given a second day per week to have his white clothes washed.

Upon his arrival at ITF, Plaintiff also requested a vegetarian diet. Defendant Conrad told Plaintiff that he would have to wait until the classification committee issued a vegetarian detail. Plaintiff informed Conrad that he would be filing a grievance complaining about the delay in receiving his vegetarian detail. Conrad warned Plaintiff not to start interfering with the way things were done at the facility or the last thing he would have to worry about was a vegetarian meal. Wickwire told Plaintiff that he could not get in the vegetarian meal line without a vegetarian detail and that Plaintiff could pick the meat out of his food or just eat the side dishes. On June 8, 2005, Plaintiff wrote to Defendant Wilson requesting a vegetarian detail and put him on notice that Plaintiff would file a grievance if the matter was not resolved.

Following a misconduct hearing on June 7, 2005, the hearing officer found Plaintiff guilty of all three contraband offenses charged by Officer Wickwire. (6/7/05 Major Misconduct Hearing Report, Exhibit F, docket #1.) On June 10, 2005, Plaintiff learned that he was designated an STG I member as a result of his affiliation with the Five Percent Nation and was transferred to the Bellamy Creek Correctional Facility (IBC), a higher security level facility. The STG Member Identification form was signed by Defendant Dusenbery on June 2 and was authorized by Defendant Mulvaney on June 6, 2005. The form referred to Plaintiff's possession of STG materials and

renunciation on July 28, 2004. The form also indicated "use/possession of symbols or logos." Apparently, Defendant "John Doe" found a medallion during a routine search of Plaintiff's cell that allegedly is associated with the Five Percent Nation. Plaintiff argues that he never received a contraband removal record, notice of intent to conduct an administrative hearing, or a misconduct report relating to the alleged medallion. He contends that Defendants John Doe, Dusenbery and Mulvaney fabricated the allegations regarding the medallion in order to designate him an STG member.

Plaintiff claims that Defendant Chaney violated his First Amendment right to practice his religion and Fourteenth Amendment due process rights by confiscating his religious material; Defendant Lowande violated his First and Fourteenth Amendment rights by ruling that Plaintiff had to send his religious materials home; Defendant Lowande violated his due process rights when he forced Plaintiff to sign the STG renunciation form; Defendants Dusenbery, Wilson and Conrad retaliated against him for complaining and filing a grievance by re-classifying him as an STG member; Defendants "John Doe," Dusenbery and Mulvaney violated his due process rights by failing to provide Plaintiff with notice and a hearing regarding the medallion allegedly found in his property; Defendants John Doe, Dusenbery and Mulvaney violated his due process rights by fabricating a charge that Plaintiff possessed an STG medallion, which resulted in his STG designation; Defendant Mulvaney violated his due process rights by designating him an STG member without adequate documentation; Defendants John Doe, Dusenbery, Wilson, Conrad and Mulvaney retaliated against Plaintiff by fabricating a charge that Plaintiff possessed a medallion associated with an STG; and Defendants Palmer, Conrad and Wilson violated his First and Fourteenth Amendment rights by failing to remedy the unconstitutional conduct through the grievance process. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

Defendants filed a motion for summary judgment for lack of exhaustion (docket #21) on April 19, 2007. This motion was granted as to Defendants Conrad and Mulvaney and denied as to Defendants Lowande, Dusenbery, Chaney, Palmer and Wilson on August 27, 2008. In addition, the court determined that Plaintiff's retaliation claims were unexhausted as to all Defendants, and dismissed those claims. (Docket #56.) In addition, Defendant Wilson was dismissed from this action on March 6, 2009. (Docket #66.)

Presently before the Court is the Motion for Summary Judgment filed by Defendants Chaney, Lowande, Dusenbery and Palmer, pursuant to Fed. R. Civ. P. 56 (docket #62). The time for Plaintiff to file a response has elapsed (docket #65) and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

*See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Initially, Defendant Palmer asserts that she is entitled to summary judgment for lack of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a

time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Defendant Palmer states that her sole involvement in this case was the denial of administrative grievances or the failure to act. Defendant Palmer cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Defendant Palmer is entitled to summary judgment for lack of personal involvement.

Defendants Chaney and Lowande contend that they are entitled to summary judgment on Plaintiff's First Amendment free exercise claims with regard to their confiscation of religious materials from Plaintiff's cell. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is

sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily

weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

Defendants correctly note that in *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005), the Sixth Circuit held that the MDOC's policy regarding the classification of inmates as STG members is rationally related to the legitimate state interest of maintaining order in the prison. In *Harbin-Bey*, the Sixth Circuit specifically addressed the Five Percent group, and noted that "[i]dentifying, reclassifying, and separating prisoners who are members of groups that engage in planning or committing unlawful acts or acts of misconduct 'targets a core threat to the safety of both prison inmates and officials.'" *Id.* at 576 (*citing In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir. 1999)).

Defendants state that on December 6, 2003, Defendant Chaney confiscated materials related to the Five Percent group from Plaintiff's cell. Defendant Lowande attests that he was transferred to RCF in March of 2004. In May or June of 2004, he was asked to assist with STG materials and processing due to his previous experience as an inspector. When he reviewed the confiscated materials, he observed that some of the items had been in storage for some time without any action being taken on them. Defendant Lowande then began to go through the items in an attempt to process and either return the items or dispose of them per policy. Defendant Lowande subsequently discovered that no hearing had ever been held on the Notice of Intent issued by

Defendant Chaney on December 6, 2003. Defendant Lowande conducted a hearing on July 28, 2004, and determined that some of the materials confiscated from Plaintiff were related to the Five Percent group. Defendant Lowande listed those materials as STG materials and explained to Plaintiff that he could have the items sent home.

As noted above, the MDOC's policy regarding the classification of inmates as STG members is rationally related to the legitimate state interest of maintaining order in the prison. In addition, the prohibition against the possession of materials related to STG groups is also reasonably related to such an interest. Therefore, in the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's First Amendment claims.

Defendants contend that they are entitled to summary judgment on Plaintiff's due process claims pursuant to *Parratt v. Taylor*, 451 U.S. 527 (1981). In *Parratt*, the United States Supreme Court held that the Due Process Clause does not prohibit deprivation of property by the state; instead it prohibits such deprivations without *due process of law*. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), overruled in part on other grounds *Daniels v. Williams*, 474 U.S. 327 (1986).

A plaintiff alleging infringement of property rights must show that the deprivation was caused by action taken pursuant to established state procedures. *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-436 (1982). As noted by Defendants, Plaintiff herein fails to make the required distinction between challenging the "established state procedure" itself and the failure of the state employee to follow that procedure. *Id.* If the official performing the state procedure fails to follow the state procedure or conform his conduct to state law, the plaintiff's injury is the result of a "random and unauthorized act" which the state was unable to foresee and thus prevent. In *Parratt*, the Supreme Court held that no procedural

due process violation occurs when the deprivation is the result of a "random and unauthorized act," unless the state failed to provide the plaintiff with an "adequate post-deprivation remedy."

> Application of the principles recited above to this case leads us to conclude the respondent has not alleged a violation of the Due Process Clause of the Fourteenth Amendment. Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the state to follow established state procedure. There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. Moreover, the State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation.

*Parratt*, 451 U.S. at 543.

The Sixth Circuit has held that in procedural due process claims brought pursuant to 42 U.S.C. § 1983, the "Parratt doctrine" allows dismissal where the state provides an adequate postdeprivation remedy if:

> 1) the deprivation was unpredictable or "random"; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.

*Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416-417 (6th Cir. 1996). In cases where these conditions are present, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong." *Copeland*, 57 F.3d at 479; *Pilgrim*, 92 F.3d at 417.

Plaintiff in this case has not demonstrated the absence of adequate state remedies for defendants' alleged misconduct. As noted by the Sixth Circuit in *Copeland v. Machulis*, 57 F.3d at 480, "Michigan provides several adequate post-deprivation remedies, including Michigan Court Rule 3.105 that allows an action for claim and deliver, Mich. Comp. Laws § 600.2920 that provides for

a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained, and Mich. Comp. Laws § 600.6401, the Michigan Court of Claims Act, which establishes a procedure to compensate for alleged unjustifiable acts of state officials." The court also stated:

> Michigan Court Rule 3.105 that allows an action for claim and deliver, Mich. Comp. Laws § 600.2920 that provides for a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained, and Mich. Comp. Laws § 600.6401, the Michigan Court of Claims Act, which establishes a procedure to compensate for alleged unjustifiable acts of state officials.
>
> Furthermore, as a state agency subject to the Michigan Administrative Procedures Act, Mich. Comp. Laws §§ 24.201-.403, the Department of Corrections is subject to numerous state laws relating to prisoner grievances. Mich. Comp. Laws §§ 791.251-.255. Specifically, Mich. Comp. Laws § 791.252 sets out detailed procedures for prisoner hearings after filing of a grievance by the prisoner. Michigan law requires that hearing officers be attorneys and gives them the power to hold formal, adversary proceedings independent from prison administration. Section 791.252 gives the prisoner an opportunity for a hearing without "undue delay," "reasonable notice" of the hearing and an opportunity for each side to present evidence and oral and written arguments on issues of fact.
>
> Section 791.254 requires rehearing upon the request of a party or upon the motion of the Department of Corrections. Rehearing is required for a variety of reasons, including where the prisoner's due process rights were violated or where established procedures were not followed. Mich. Comp. Laws § 791.254.
>
> Finally, Section 791.255 provides for judicial review of a final decision in the state circuit court so long as the prisoner has requested a rehearing of the initial decision. The court has plenary power to review the hearing decision. Discretionary review is available up to the Michigan Supreme Court. The Sixth Circuit has squarely held that the appeal of administrative decisions to the state circuit court provides an adequate remedy for violations of due process for purposes of *Parratt v. Taylor. See Blue Cross and Blue Shield v. Baerwaldt,* 726 F.2d 296, 300 (6th Cir.1984)(Michigan Administrative Procedures Act provides ample opportunity to raise constitutional claims in state court); *cf. Tocco v. Marquette Prison Warden,* 123 Mich. App. 395, 399, 333 N.W.2d 295, 297

(1983)(judicial review section under Michigan Administrative Procedures Act applies to Department of Corrections administrative decisions).

*Copeland v. Machulis*, 57 F.3d at 480.

The fact that the remedies provided by the state do not provide all the relief which may be available under 42 U.S.C. § 1983 does not mean that the state remedies are ineffective. *Parratt*, 544 U.S. at 544. Therefore, in the opinion of the undersigned, Defendants Chaney and Lowande are entitled to summary judgment on Plaintiff's due process claims pursuant to *Parratt*.

In addition, the record in this case establishes that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). In this case, Plaintiff received an administrative hearing, after which Defendant Lowande found that the seized materials containing any reference to the Five Percent Nation were STG contraband and

would be sent home at the prisoner's expense. Plaintiff was present during the hearing and was allowed to present his side of the conflict. (7/28/04 Administrative Hearing Report, Exhibit D, docket #1.) Therefore, in the opinion of the undersigned, Plaintiff received due process.

Defendants state that with regard to Plaintiff's claim that Defendant Lowande coerced him into signing a renunciation form disavowing his membership in the Five Percent group, they are entitled to summary judgment because all of the evidence contradicts this assertion. As noted by Defendants, in Plaintiff's step I grievance No. ITF 2005-06-304-24z, which is dated June 17, 2005, he asserts that he did not know that the Five Percent group was an STG. Plaintiff states in the grievance that he signed an STG renunciation form renouncing the "5% Nation of Gods Earths," and that Defendant Lowande concurred. (Defendants' Exhibit 3, docket #22.) In addition, on July 19, 2005, Plaintiff filed grievance no. IBC 2005-07-2696-08g, in which he acknowledged signing a renunciation form regarding the Five Percent group. (Defendants' Exhibit 2, docket #22.) Neither grievance indicates that Plaintiff was coerced into signing the form.

Defendants also note that on June 13, 2005, Plaintiff kited Inspector Welton at IBC. In the letter, Plaintiff stated that he had received an administrative hearing on July 28, 2004, and had discovered that the "Nation of Gods & Earths (5%)" was an STG group. Plaintiff stated that he sent all the STG material home and renounced the group. (Plaintiff's Exhibit L, docket #1.) Plaintiff restated this assertion in a June 23, 2005, kite to Inspector Welton. (Plaintiff's Exhibit N, docket #1.) After reviewing the record, the undersigned concludes that Defendants are entitled to summary judgment on Plaintiff's due process claim that he was coerced into renouncing his membership in the Five Percent group.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar

- 14 -

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' motion for summary judgment (Docket #62) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same

reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 26, 2009